IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES RANDELL HUGHES**, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Case No. **3:07-CV-240-L** |
| | § | (consolidated with **3:07-CV-1780-L**) |
| **WILLIAM T. NEARY**, | § | |
| UNITED STATES TRUSTEE, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are appeals from the Memorandum Opinion and Order, issued November 6, 2006,[1] and the Memorandum Opinion Granting in Part and Denying in Part Motion for Summary Judgment, issued November 16, 2006,[2] by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. After careful consideration of the briefs, the records on appeal, and the applicable law, the court **affirms** the holdings in the Memorandum Opinion and Order and the Memorandum Opinion Granting in Part and Denying in Part Motion for Summary Judgment.

### I.    Background

The material facts are substantially undisputed. Therefore, the court will summarize only those facts necessary for clarity and understanding of this opinion. James Hughes ("Hughes") is a former Dallas Cowboy football player. In the 1970s and 1980s, Hughes and his business partner formed various real estate entities that dealt mostly in land development and the construction and sale of "high-end" homes. In the late 1980s, these entities failed, which resulted in millions of

---

[1]The court cites to this order as 1 Mem. Op.

[2]The court cites to this order as 2 Mem. Op.

**Memorandum Opinion-Page 1**

unpaid debts on which Hughes and his business partner were personally liable. Because of the unsatisfied judgments and resulting garnishments, Hughes began to operate on a cash basis.

Around 2002, Hughes began working for H. Hughes Properties, Inc. ("H. Hughes Properties"), a company owned by his wife. This company also acts as general contractor of "high-end" homes. Hughes earns $2,500 twice a month after withholdings. Hughes cashed his paychecks when he needed money and paid for items in cash. Upon receiving the $5000, he used half to pay his children's private school tuition to Hockaday Academy and Jesuit, $400 to $500 for his spending money, and placed the balance of approximately $2,000 in a drawer at his home from which he and his wife paid for housekeepers, lawn and pool maintenance, and groceries. Hughes did not keep records of the payments for these expenses. In response to requests from the United States Trustee ("Trustee") for documentation, he provided only grocery receipts and copies of the cashier's checks used to pay the tuition.

On October 5, 2005, Hughes filed for Chapter 7 bankruptcy. Thereafter, Trustee began reviewing financial information and inquiring about certain discrepancies in the income reported, inconsistencies between the various schedules and amended schedules, and inconsistencies between the schedules and the supporting documentation. Based on these inconsistencies and Trustee's perception that Hughes was evasive in his explanation of them, on March 30, 2006, Trustee filed a complaint objecting to the discharge of Hughes's debts under 11 U.S.C. §§ 727(a)(3), (a)(4)(A), and (a)(5) (2004). On November 6, 2006, the bankruptcy court denied Hughes's discharge under 11 U.S.C. § 727(a)(3), because it determined that he had failed to keep documents and records from which his financial condition could be ascertained and that he did not justify this failure. Hughes now appeals this judgment.

Also on March 30, 2006, one of Hughes's creditors, The Cadle Company ("Cadle"), filed a complaint objecting to the discharge of Hughes's debts under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(7). Cadle moved for summary judgment only as to the allegations made pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4). On November 16, 2006, the bankruptcy court granted partial summary judgment in favor of Cadle and denied Hughes's discharge under 11 U.S.C. § 727(a)(3) for the same reasons stated in its November 6, 2006 opinion. Hughes also appeals this judgment.

## II. Standard of Review

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, its conclusions of law are reviewed *de novo,* and mixed questions of fact and law are reviewed *de novo*. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.), *cert. denied,* 531 U.S. 871 (2000); *Bass v. Denny (Matter of Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999) (mixed questions of law and fact subject to *de novo* review). A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).

## III. Analysis

### A. Hughes v. Neary

With respect to the first appeal, the issues before the court are as follows: (i) whether Trustee met his burden by proving that the failure to maintain a record of personal expenses prevented him

from ascertaining Hughes's financial condition; (ii) whether the bankruptcy court erred in using an incorrect legal standard to excuse Trustee from proving the second element in his cause of action; (iii) whether the proper legal standard was used for determining whether Hughes failed to keep or maintain records relating to personal expenses; (iv) whether the bankruptcy court erred in imposing a legal duty on Hughes to keep a precise written ledger of personal expenses; (v) whether, when using the proper legal standard, Hughes met his record-keeping burden. Because the issues presented overlap, the court combines these issues and addresses them as follows: (a) whether Trustee established a prima facie case under section 727(a)(3) and (b) whether the bankruptcy court used the correct legal standard in determining whether Hughes failed to keep or maintain records relating to personal expenses**.**

### 1. Trustee's Prima Facie Case

Hughes contends that the bankruptcy court impermissibly excused Trustee from proving the second element of his prima facie case. Trustee contends that because he established that Hughes had failed to keep and maintain adequate records, the burden shifted to Hughes to justify the failure.

The relevant statute, 11 U.S.C. § 727(a)(3), provides:

> The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). To state a prima facie case under section 727(a)(3), the party objecting to discharge bears the initial burden to prove that (1) the debtor failed to keep and preserve financial records and (2) this failure prevented the party from ascertaining the debtor's financial condition. *Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 703 (5th Cir. 2003). Once the objecting party

**Memorandum Opinion-Page 4**

meets this burden, the debtor "must prove that the inadequacy is justified under all the circumstances. The bankruptcy court has wide discretion in both inquiries, and its determination is a finding of fact reviewed for clear error." *Id.* (internal quotation and citations omitted).

The bankruptcy court determined that Trustee established a prima facie case under this section. Hughes argues that the bankruptcy court did not specifically determine that his failure to maintain records prevented Trustee from ascertaining his financial condition and that there is no evidence in the record to support such a finding. Both of these contentions lack merit. The bankruptcy court's determination that there were no records to show how much cash went in and out of Hughes's control in the months preceding his bankruptcy, 1 Mem. Op. 31, necessarily supports, or results in, a determination that Hughes's records were not sufficient to ascertain his financial condition. Moreover, the record supports such a determination. The bankruptcy court noted the following deficiencies: (1) Hughes operated on a cash basis, but did not maintain any records of his financial transactions, (2) Hughes had no way to account for the approximately $2,000 each month that he put into a drawer at his home for household expenses, except grocery receipts and cashier's checks for his children's private school tuition, (3) Hughes had no records to track the $400-$500 per month he used for spending money, and (4) Hughes provided unreliable documentation of his earnings because his W-2s were not based upon the wages earned during the relevant tax year and they did not include personal use of company assets, such as the company car, cell phone, and credit card. Hughes does not contradict any of these findings. Without reliable documentation of his earnings and expenditures, there is no way to ascertain Hughes's financial condition. The bankruptcy court did not impermissibly excuse Trustee from proving the second element of his prima facie case, and therefore, did not err.

## 2. Standard for Failure to Keep/Maintain Personal Expense Records

Hughes contends that the bankruptcy court erred in using the legal standard for debtors who operate a business in determining the sufficiency of the records for his personal expenses. Hughes bases this argument on certain wording in the bankruptcy court's opinion and on his interpretation of certain language in *Goff v. Russell Co.*, 495 F.2d 199 (5th Cir. 1974).

First, according to Hughes, "[t]he cornerstone of [the bankruptcy court's] opinion is a finding that [Hughes's] records are 'not keeping with standard business and accounting practices' and cash expenditures could not be determined 'precisely.'" App. Br. ¶ 40. Hughes misstates the findings of the bankruptcy court. In discussing the practice of John Evans, the accountant for H. Hughes Properties, of reporting income on the W-2s based on the paychecks cashed by Hughes in a tax year instead of reporting all income earned by Hughes in that tax year, the bankruptcy court noted that:

> although Mr. Hughes points to the Forms W-2 as one of the only reliable means of determining how much money he was paid in any given year, they are not so reliable; they appear to change based upon Mr. Hughes'[s] whims as to when he might cash his payroll checks. This is not in keeping with standard business and accounting practices.

1 Mem. Op. 17. The bankruptcy court neither stated nor implied that Hughes's record-keeping was insufficient because it failed to comport with standard business and accounting practices. This comment was aimed at his employer's payroll practices and was related to the reliability of the records in question.

With regard to Hughes's contention that the bankruptcy court determined that his cash expenditures could not be determined "precisely," Hughes again misstates the determination. The bankruptcy court found that, based all of the evidence, "there [were] no records to show precisely how much cash (i.e., potential future property of the estate) went in and out from the Debtor's

dominion and control in the months leading up to the bankruptcy case." *Id.* at 31. In so stating, the bankruptcy court did not require Hughes to document his earnings or expenditures with precision. It merely noted that there were no records with which a determination of just how much money passed through Hughes's hands prior to the filing of his bankruptcy petition.

Next, Hughes cites *Goff* for the proposition that his records "should be judged by what records a 'normal' person would maintain" because *Goff* "specifically accepts (sic) '. . . uncomplex financial affairs which do not require books or substantial records.'" App. Br. ¶ 17. According to Hughes, he maintained sufficient records because "no financial records, or at least minimal records are required" of a wage-earning employee. *Id.* ¶ 41. The language upon which Hughes relies does not apply to him.

In *Goff*, the court stated that "an *unsophisticated* wage earner dealing primarily in cash should not be denied discharge because he failed to keep books of account." 495 F.2d at 201 (emphasis added). As the bankruptcy court correctly noted, Hughes "is a well-educated man, holding a degree in finance from a well-respected university. He is a sophisticated business man, having dealt in multi-million dollar transactions for many, many years." 1 Mem. Op. 34. Hughes is *not* an unsophisticated wage earner and, therefore, he is not held to the same standard as an unsophisticated wage earner.

In *Goff*, the court also stated that "[o]ther examples [were] certainly conceivable: small farmer, traveling salesman, or student. Far from carrying any derogatory connotation[,] this grouping merely indicates that normal people in these classifications have uncomplex financial affairs [that] do not require books or substantial records." *Goff,* 495 F.2d at 202 n.12. Because normal people in these classification do not have lawn and pool maintenance expenses,

housekeeping expenses, and children in private school, Hughes's financial affairs are not comparable to a small farmer, traveling salesman, or student. He was not an unsophisticated wage earner who kept records appropriate for his assets and liabilities. He is a sophisticated business man with a degree in finance who kept no records of his expenditures and provided unreliable documentation of his income. The sufficiency of Hughes's records is to be determined on a case-by-case basis, and the bankruptcy court has broad discretion in making this determination. The record supports the bankruptcy court's finding that Hughes did not keep adequate financial records based on his education, experience, and sophistication. Therefore, the finding that Hughes failed to maintain adequate records from which his financial condition could be ascertained was not clearly erroneous.

To justify his failure, Hughes argues that he fully explained his financial affairs and that the bankruptcy court found the explanations credible. That the bankruptcy court believed his reasons for not maintaining adequate records is not tantamount to the bankruptcy court finding these reasons to be satisfactory. The statute imposes a duty on Hughes to justify, not merely explain, his failure to maintain adequate records. Therefore, the bankruptcy court did not clearly err in finding that, under all of the circumstances of the case, Hughes provided insufficient justification for his failure to maintain adequate records.

### B. Hughes v. Cadle

With respect to the second appeal, Hughes raises only one issue that differs from the issues raised in the first appeal. The additional issue is whether the bankruptcy court made the necessary finding that Hughes's failure to maintain adequate records prevented Cadle from ascertaining his

financial condition. Because the remaining issues were resolved in the court's analysis of the first appeal, it addresses only the issue that remains unresolved on this appeal.

Hughes contends that the bankruptcy court failed to make the necessary finding that his failure to maintain adequate records prevented Cadle from ascertaining his financial condition. The bankruptcy court stated the following: "When asked by counsel for Cadle at the section 341 meeting whether there was any record that he could go to in order to determine what funds had passed through Mr. Hughes'[s] hands, Mr. Hughes replied quite candidly that there was no record." 2 Mem. Op. 17. The bankruptcy court then determined that there was no genuine issue of material fact with regard to " Mr. Hughes'[s] netting approximately $5000 a month and keeping *no* record of what happened to that $5000 a month." *Id.* (emphasis added). The bankruptcy court's determination that there were *no* records to show how the $5000 was spent each month, necessarily supports, or results in, a determination that Hughes's records were not sufficient to ascertain his financial condition. Moreover, based upon this testimony, the record is sufficient to support this determination. Accordingly, the bankruptcy court did not err in failing to make the express determination that Hughes's failure to maintain adequate records prevented Cadle Co. from ascertaining his financial condition.

### IV. Conclusion

For the reasons stated herein, the bankruptcy court's Memorandum Opinion and Order, issued November 6, 2006, and the Memorandum Opinion Granting in Part and Denying in Part

Motion for Summary Judgment, issued November 16, 2006, are **affirmed**. The clerk is hereby directed to prepare, sign, and enter the judgment pursuant to Bankruptcy Rule 8016.

**It is so ordered** this 27th day of March, 2008.

_____
Sam A. Lindsay
United States District Judge